# MATTER OF PINEDA

## In Visa Petition Proceedings

### A-28607660

*Decided by Board June 19, 1989*

(1) A visa petition filed by a father on behalf of his child who was born out of wedlock was properly denied when the father failed to establish the existence of a bona fide parent-child relationship and thereby failed to establish that the beneficiary was his "child" within the meaning of section 101(b)(1)(D) of the Immigration and Nationality Act, 8 U.S.C. § 1101(b)(1)(D) (Supp. IV 1986).

(2) In order for an illegitimate child to qualify within the meaning of section 101(b)(1)(D) of the Act, a bona fide parent-child relationship need only exist at the time the visa petition is filed or at some prior point during the life of the child, provided the child is unmarried and less than 21 years of age when the relationship is established.

(3) Congress has provided no guidance on the intended meaning of the phrase "bona fide parent-child relationship," but at minimum there should be some showing of emotional and/or financial ties or an active concern by the father for the child's support, instruction, and general welfare.

(4) Evidence relevant to establishing a bona fide parent-child relationship is varied and widespread in nature and may include money order receipts or cancelled checks showing the petitioner's financial support of the beneficiary; income tax returns; medical or insurance records; school records for the beneficiary; correspondence between the parties; and notarized affidavits of friends, neighbors, school officials, or other knowledgeable associates.

(5) The most persuasive evidence for establishing a bona fide parent-child relationship is documentary evidence which was contemporaneous with the events in question.

(6) Evidence showing that the parent-child relationship was established only after the petitioning father gained lawful permanent resident status and, by extension, the legal right to seek preference status for the beneficiary may be sufficient proof of a bona fide relationship and cannot be presumed to be inherently self-serving or otherwise invalid.

ON BEHALF OF PETITIONER:
Robert E. Kahn, Esquire
6906 Atwell, Suite 103
Houston, Texas 77081

ON BEHALF OF SERVICE:
William Doug Craig
Assistant Regional
Counsel

BY: Milholian, Chairman; Dunne, Morris, Vacca, and Heilman, Board Members

This is an appeal from a June 22, 1988, decision of the Immigration

and Naturalization Service Regional Service Center ("RSC") director denying a visa petition filed by the petitioner on behalf of the beneficiary as his unmarried daughter under section 203(a)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1153(a)(2) (1982). The RSC director's decision was based on the determination that the petitioner had not met his burden of proof in establishing that his daughter was his child within the meaning of section 101(b)(1) of the Act, 8 U.S.C. § 1101(b)(1) (1982), and, therefore, had not established her eligibility for the benefit sought. The appeal will be dismissed.

The petitioner, a 42-year-old native and citizen of El Salvador, entered the United States in or before 1981 and became a lawful permanent resident on October 11, 1983. The beneficiary is an 18-year-old native and citizen of El Salvador. The Notice of Appeal (Form I-290A) indicates that the beneficiary entered the United States without inspection in July 1982. On March 11, 1987, when the beneficiary was 16 years of age, the petitioner filed a visa petition on her behalf claiming preference status for her as his unmarried daughter. A certified copy of the beneficiary's 1971 birth certificate and a certified summary English translation of the birth certificate dated March 9, 1987, were submitted with the visa petition. The documents reflect that the beneficiary is the petitioner's natural daughter but was born out of wedlock.

Pursuant to section 101(b)(1)(C) of the Act, the beneficiary would be considered the petitioner's child for immigration purposes and would qualify for preference status only if she had been "legitimated under the law of [her] residence or domicile, or under the law of [the petitioner's] residence or domicile" prior to the age of 18. The RSC director held that the facts, as presented in this case, revealed no record of legitimation, and the petitioner does not appeal from the RSC director's ruling in this regard. This appeal is the result of the RSC director's determination that the beneficiary does not qualify as the petitioner's child under section 101(b)(1)(D) of the Act. That section defines a child as "an illegitimate child, by, through whom, or on whose behalf a status, privilege, or benefit is sought by virtue of the relationship of the child to its ... natural father if the father has or had a bona fide parent-child relationship with the person."

As noted previously, the petitioner submitted a visa petition on the beneficiary's behalf in March 1987 along with proof that he was her natural father. Within the petition, he indicated that he and the beneficiary shared the same Houston, Texas, address. He reported that she had entered the United States without inspection but did not indicate the date on which she arrived. By means of a Form I-72 dated May 29, 1987, the Immigration and Naturalization Service asked that the petitioner provide a certified copy of his certificate of marriage to

the beneficiary's mother. He responded on June 22, 1987, that he had never married the beneficiary's mother and the beneficiary was therefore illegitimate. By means of a Form I-72 dated July 29, 1987, the Service advised the petitioner of the requirements for establishing legitimation under section 101(b)(1)(C) of the Act and of the need for documentary evidence. The record indicates no response from the petitioner. By means of a Form I-72 dated September 10, 1987, the Service advised the petitioner of the provisions of section 101(b)(1)(D) and of the need to establish a bona fide parent-child relationship between himself and his daughter. Numerous examples of evidence he might submit to establish this relationship were listed as part of the typewritten material in the form and, in addition, a Service employee added the following request in script: "Please furnish documents back to the earliest time of financial support." In response to this request the petitioner provided the Service with copies of his federal income tax returns for the years 1984 through 1986, which listed the beneficiary as his dependent for tax purposes; a copy of the beneficiary's report card, which had been issued by the Houston Independent School District for the school term ending June 4, 1987, and which the petitioner had signed as the beneficiary's parent; and a copy of the beneficiary's immunization record, which indicated that she had been immunized in Houston in October 1982 and July 1983. He also provided an affidavit executed by the beneficiary on September 30, 1987. The beneficiary stated in the affidavit that she was currently residing at the petitioner's address and that her father had always been and continued to be responsible for her financial support and personal welfare.

The RSC director determined that the petitioner's evidence was insufficient to establish a bona fide parent-child relationship. He characterized the beneficiary's affidavit as "self-serving" and noted that it was not supported in any way by documentary proof of financial support. While apparently acknowledging that the tax returns for 1984 to 1986 did establish the petitioner's financial support of the beneficiary during this time period, he characterized these records as "self-serving" since the support in question came about at a time when the petitioner and beneficiary would most benefit under the immigration laws. He indicated that documentary evidence of support between 1971, when the beneficiary was born, and 1983, when the petitioner became a lawful permanent resident, should have been submitted and that this evidence should have included medical bills at birth, school records, insurance forms, money orders for the beneficiary's support, or any other evidence of a bona fide parent-child relationship during this period.

Section 101(b)(1)(D) states that a bona fide parent-child relation-

ship need only exist at the time of filing of the visa petition or at some prior point during the life of the child, provided the child is unmarried and less than 21 years of age when the relationship is established. *See also Matter of Vizcaino*, 19 I&N Dec. 644 (BIA 1988). There are no other time requirements set forth in the Act. The petitioner maintains that he. and the beneficiary enjoyed a parent-child relationship for many years prior to her departure from El Salvador and have continued the relationship subsequent to her entry into the United States. A finding that the relationship existed either before or after she entered the United States, however, would be sufficient to qualify her as the petitioner's child for immigration purposes.

In visa petition proceedings, the burden is on the petitioner to establish the beneficiary's eligibility for the benefit sought by a preponderance of the evidence. *Matter of Brantigan*, 11 I&N Dec. 493 (BIA 1966); *Matter of Soo Hoo*, 11 I&N Dec. 151 (BIA 1965). As the Board noted in *Matter of Vizcaino, supra*, Congress has provided no guidance on the intended meaning of the phrase "bona fide parent-child relationship" and the criteria for such a relationship is best developed on a case-by-case basis. At minimum, however, some showing of emotional and/or financial ties must be made. There should be evidentiary proof that the parent and child live or lived together, or that the father held the child out as his own, or that he provided for some or all of the child's needs, financial and otherwise, or that in general the father's behavior evidenced a genuine concern for and interest in the child. Further guidance concerning the meaning of "bona fide parent-child relationship" was provided in an interim rule published for comment by the Service on March 17, 1989. Pursuant to this interim rule, a bona fide parent-child relationship "exists or has existed where the father evinces or has evinced an active concern for the child's support, instruction, and general welfare." 54 Fed. Reg. 11,160 (1989) (to be codified at 8 C.F.R. § 204.2). The most persuasive evidence for establishing the relationship is "documentary evidence which was contemporaneous with the events in question," but secondary evidence may be acceptable. *Matter of Vizcaino, supra*, at 648.

The report card and immunization record submitted by the petitioner are of little, if any, evidentiary value in these proceedings. The report card apparently was issued by school authorities and signed by the petitioner as the beneficiary's parent in June 1987, i.e., approximately 3 months after the petition was filed. While the card may serve as proof of a parent-child relationship between the petitioner and beneficiary as of that date, it provides no proof of a relationship before or at the time the visa petition was filed in March 1987. The immunization record, which was issued by the Houston

Health Department, cites the beneficiary's name, sex, and date of birth and specifies that she received immunizations in 1982 and 1983. While it may serve as evidence that the beneficiary was residing somewhere in the Houston area in 1982 and 1983, it does not show her specific address, it makes no reference to her parentage, and it does not otherwise link the beneficiary to the petitioner.

Sworn affidavits clearly are an acceptable means of establishing eligibility for a benefit, and the beneficiary's affidavit, in our opinion, is credible evidence of the petitioner's financial support and personal concern for the beneficiary throughout her life. We also find that the tax returns provide some evidence of the petitioner's financial support of the beneficiary during the period from 1984 to 1986. In this regard we note that inherent in the RSC director's decision to dismiss the tax returns as "self-serving" evidence is the implication that the petitioner embarked on his financial support of the beneficiary only in order to obtain preference status for her pursuant to section 203(a)(2) and not out of a desire to establish a true parent-child relationship. Our review of the record discloses no evidence to support this implication. Indeed, the beneficiary appears to qualify as the petitioner's child for immigration purposes only under section 101(b)(1)(D) of the Act, a provision of the law which was not enacted until November 1986. The petitioner's support, on the other hand, began long before that date, in 1984.

Because the financial support evidenced by the tax returns began after the petitioner gained his lawful permanent residence and, by extension, the legal right to seek preference status for the beneficiary under section 203(a)(2) of the Act, it appears that the RSC director has, in effect, presumed the support to be invalid evidence of a bona fide relationship and has determined that evidence of an earlier parent-child relationship must be forthcoming in order for the petitioner to overcome the presumption. We find no legal basis for such a presumption and reject the RSC director's determination that evidence of parental support prior to the petitioner's acquisition of lawful permanent resident status in 1983 is essential to a finding of a bona fide parent-child relationship in this case.

While we reject the RSC director's characterization of both the affidavit and tax returns as "self-serving," we believe this evidence is scant and of limited evidentiary value. It is insufficient to establish the active parental concern for the child's support and general welfare that we believe must be present in any bona fide parent-child relationship.

The petitioner maintains that no other evidence of the relationship is available, citing as his reason the fact that the beneficiary fled El Salvador during a civil war and entered the United States without inspection. These circumstances, according to the petitioner, made it

impossible or unfeasible for the beneficiary to bring to the United States those documents necessary to establish the parent-child relationship. We recognize that some documents pertinent to the issue at hand may not be available for the reason given by the petitioner and note that difficulties which the petitioner may face in obtaining evidentiary material should be taken into account in reviewing the record. *Matter of Vizcaino, supra.* Nonetheless, we find the petitioner's argument in this regard to be unpersuasive. The evidence relevant to establishing a parent-child relationship is varied and widespread in nature and is not confined to documents the beneficiary may have had in her possession during her residence in El Salvador. It may include money order receipts or cancelled checks showing the petitioner's financial support of the beneficiary at any point in her life, including the time subsequent to her entry into the United States; medical or insurance records; school records on the beneficiary, including those compiled during her schooling in the United States; correspondence between the parties, including correspondence that the petitioner may have received from the beneficiary while she was still in El Salvador; and notarized affidavits of friends, neighbors, school officials, or other knowledgeable associates attesting to the existence of the parent-child relationship.

We note in conclusion that the petitioner claims the RSC director's decision to be in error in his case because the RSC director neglected to consider the fact that the beneficiary resided with him and, moreover, made no investigation to verify where she did reside. He further states that a common residence in conjunction with the financial support evidenced by the tax returns are sufficient to show a bona fide parent-child relationship. This may indeed be the case. However, as noted, the Board held in *Matter of Brantigan, supra,* that the burden of establishing eligibility for a benefit sought lies with the petitioner. The RSC director is under no obligation to make his case for him. The petitioner submitted no evidence concerning the beneficiary's residence at the time he filed the petition. On three occasions subsequent to filing the petition he was contacted by the Service and asked to provide evidence establishing that the beneficiary in some way qualified as his child for immigration purposes. On September 10, 1987, the last of these occasions, he was specifically advised of the provisions of section 101(b)(1)(D) and of his need to establish a bona fide parent-child relationship by submitting evidence of financial support of the child or of "any other documented actions which reflect on the existence of such a relationship." Although he was put on notice of the evidentiary requirements of his case and was given a reasonable opportunity to respond with evidence of the beneficiary's residence, he failed to do so.

The petitioner has not satisfied his burden of establishing that the beneficiary is entitled to recognition as his daughter under section 101(b)(1)(D) of the Act. We note, however, that the petitioner may file a new visa petition on behalf of the beneficiary should he hereafter be able to produce additional, probative evidence of a bona fide parent-child relationship between the parties. Accordingly, the appeal will be dismissed.

**ORDER:**     The appeal is dismissed.